**Affirmed and Memorandum Opinion filed March 29, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00584-CV

---

### R.G., Appellant

### V.

### DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee

---

**On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 20CP0025**

---

## MEMORANDUM OPINION

This accelerated appeal arises from a final order in which, after a final hearing tried to the bench,[1] the trial court terminated the parental rights of appellant R.G. (Father) with respect to his son K.G. (Kyle),[2] who was one-year old at the time of trial, and appointed appellee Department of Family and Protective Services

---

[1] We refer to the final hearing as the "trial."

[2] To protect the minor's identity, we have not used the actual names of the child, parents, or other family members. *See* Tex. R. App. P. 9.8.

(the Department) to be Kyle's sole permanent managing conservator. *See* Tex. Fam. Code Ann. § 109.002(a-1) (accelerated appeals in parental-termination cases); Tex. R. App. P. 28.4 (same).[3]

In issue one, Father challenges the legal and factual sufficiency[4] of the evidence to support the trial court's findings in its final order (1) on the predicate grounds of endangerment, (2) on the predicate ground of failure to comply with the court-ordered family-service plan, and (3) that termination is in the best interest of Kyle. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (b)(2). In issue two, Father challenges the trial court's appointment of the Department as permanent managing conservator of Kyle. *See* Tex. Fam. Code Ann. §§ 153.005, .131, .371. We affirm.

## I. BACKGROUND

Kyle was born in January 2020. When Kyle was born, he tested positive for the drug Suboxone and required medical treatment to manage his withdrawals. Though Mother was discharged, Kyle remained in the hospital for treatment. When he was ready for discharge, Kyle's mother did not pick him up from the hospital. The Department was contacted by the hospital and placed Kyle with his maternal grandparents.

The Department sought and received temporary conservatorship over Kyle. Father was incarcerated awaiting trial on a separate criminal charge at the time of Kyle's birth and became aware of Kyle's birth and situation when a Child

---

[3] Kyle's mother M.T. (Mother) signed an affidavit voluntarily relinquishing her parental rights regarding Kyle. *See* Tex. Fam. Code Ann. § 161.103. The trial court terminated Mother's parental rights on that basis, and Mother does not appeal.

[4] While Father did not file a motion for new trial, "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." Tex. R. App. P. 33.1(d).

Protective Services (CPS) investigator visited him in the Galveston County jail. Father was found guilty of the criminal charge, sentenced to prison, and released in late August 2021. The trial on termination of Father's parental rights was held on September 20, 2021, and the trial court terminated Father's parental rights to Kyle pursuant to Family Code subsections 161.001(D), (E), and (O). The trial court also found termination was in the Kyle's best interest and named the Department as Kyle's permanent managing conservator.

## A. Documentary evidence

### 1. Order for protection of child in an emergency

In response to the Department's February 2020 original petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship, the trial court found there was an immediate danger to Kyle's physical health or safety. The trial court further found Kyle's mother was using a controlled substance and such substance constituted a danger to Kyle. As a result of these findings, the trial court named the Department as the temporary sole managing conservator of the child with rights to physical possession of the child until a full adversary hearing was held. The petition was supported by an affidavit that is not part of the trial record.

### 2. Family-plan evaluation

According to the Department's family-plan evaluation, which was admitted into evidence at trial, the goal for Kyle was to ensure he lives in a safe, stable, drug-free home. The family plan, written by the caseworker, stated the Department was "worried [Father's] current incarceration would make him unable [] to care for and provide a permanent residence for [Kyle]. The Department is also worried about [Father's] recent history of domestic violence."

3

The plan outlined the required actions for Father including the following:

- maintain minimum monthly contact with the caseworker;
- notify the caseworker of any changes to his address or telephone number;
- obtain and maintain gainful employment;
- maintain monthly contact with guardian ad litem about the health and welfare of Kyle;
- complete an assessment for needed family services after release from prison;
- write a report to the Department about any of Father's mental-health diagnoses;
- attend and complete a drug-and-alcohol assessment and follow all recommendations for treatment; and
- attend and participate in counseling to address the issues leading to Kyle's removal as a parent.

### 3. Father's prior convictions

Also admitted at trial were seven judgments of conviction representing Father's criminal history:

- Possession of a controlled substance (cocaine) with intent to deliver for an offense committed in May 2010; six months in state jail. No. 11CR0341 (405th Dist. Ct., Galveston Cty., Tex. Nov. 2, 2012).
- Assault causing bodily injury to family member, with a finding of family violence, for an offense committed in October 2014; 90 days in jail. No. 14CR3435 (56th Dist. Ct., Galveston Cty., Tex. Nov. 23, 2015).
- Driving with an invalid license with previous convictions for an offense committed in June 2015; 180 days in jail. No. MD-0355981 (Cty. Ct. 1, Galveston Cty., Tex. Dec.14, 2015).
- Evading arrest for an offense committed in July 2015; one year in jail. No. 15CR1783 (56th Dist. Ct., Galveston Cty., Tex. Nov. 23, 2015).
- Attempted evading arrest with a vehicle for an offense committed in

4

May 2017; one year in jail. No. 17CR1447 (122nd Dist. Ct., Galveston Cty., Tex. May 10, 2018).

- Assault causing bodily injury to a family member, with a finding of family violence, for an offense committed on December 10, 2019; 205 days in jail. No. MD-0391738 (Cty. Ct. 1, Galveston Cty., Tex. July 13, 2020).

- Assault of a family member causing bodily injury, with a finding of family violence, enhanced by a previous family-violence conviction for an offense committed on December 20, 2019; two years in prison. No. 19CR3913 (405th Dist. Ct., Galveston Cty., Tex. July 15, 2020).

Father's three convictions for family violence involved violence against Mother.

## B.    Trial testimony

### 1.    CPS Investigator

Child Protective Services (CPS) investigator T. Vosburg testified the Department received a phone call alleging physical abuse of Kyle, a newborn baby, because he tested positive at birth for the drug Suboxone. Kyle had to be hospitalized with a morphine drip to address his drug withdrawal. When the investigator arrived at the hospital, Mother was not at the hospital, and Kyle's records reflect Mother had only visited two or three times in nine or twelve days. The investigator tried to call Mother to advise her that Kyle was ready to be discharged. At first, a man answered Mother's phone and said Mother was inside a store. After several attempts, Mother answered her phone and screamed at the investigator and then threw her phone. The man who answered Mother's phone picked up the phone and stated he and Mother were on the way to the hospital. The investigator waited for several hours but Mother never arrived to discharge her baby.

The investigator received emergency custody of Kyle and placed Kyle with his maternal grandparents. She testified Mother and Father have two older children

who are both living with their maternal grandparents. CPS became involved with the older children because of referrals relating to domestic violence, mental illness, and substance abuse by Mother and Father. Father was involved in the previous CPS cases but never finished his services related to those cases.

The investigator visited father in county jail to discuss Kyle's removal and status. Father was incarcerated related to charges pending against him for family violence against Mother while she was pregnant with Kyle. Father was unaware of Kyle's birth or exposure to Suboxone and denied any domestic violence towards Mother. Father described Mother as having a history of methamphetamine use and addiction.

## 2. Father

Father testified he and Mother were never formally married, but he believed they were informally married. He first learned of Kyle's birth from the CPS investigator shortly after Kyle was born. Father was incarcerated at the time. Father admitted he left Kyle in the care of Mother during his incarceration, who has struggled with addiction for years. However, he stated he was not aware of Mother taking drugs during her pregnancy, include Suboxone.

During his incarceration, he met once with a CPS investigator. He also met with a caseworker to go over the family evaluation plan while he was in prison. Though he completed a couple of classes in prison, he was not able to complete all the services required under the plan. He also testified that due to the COVID-19 pandemic the prison did not offer all the classes he needed. Since his release, he testified he had not completed any classes because he lacked the funds to pay for the classes. He also had not sought any referrals from CPS. He testified he had not maintained monthly or regular contact with the caseworker or the guardian ad litem.

Father received an offer of employment but had not yet started working. He was living with a friend and did not yet have long-term housing. He testified he was presently unable to care for Kyle, though he hoped to be able to do so in the future. Father had not yet taken the drug-and-alcohol assessment that was required following his release from prison. He also had not attended any individual counseling as required by the family evaluation plan.

Father testified his two older children have lived with their maternal grandparents for approximately eight years. Though he had not paid child support in several years, he testified he paid some child support for his oldest child. He testified that before he was incarcerated, he would see his older two children regularly and play with them. During his incarceration, he wrote the children letters and sent cards. He testified he received no response from the older children. Father has seen Kyle once in a video conference arranged by the caseworker.

### 3.    CPS caseworker

CPS caseworker I. Sinegal testified Kyle was currently placed with his maternal grandparents. She stated he is very bonded with his grandparents and has a close relationship with his two brothers. The Department's goal for Kyle is to be adopted by his grandparents, which the caseworker felt was in his best interest.

Father notified the caseworker the day after his release from prison; however, she did not make any referrals for services as she did not believe there would be time for Father to complete the services before trial. The caseworker also testified that due to the COVID-19 pandemic, the Department was not able to send anyone to the jail or provide a referral to a parenting class.

The caseworker testified she was not aware that Father contributed in any way to Kyle's exposure to drugs at birth. However, she did testify Father did not

complete the services in the prior CPS cases related to his older children. She did not believe Father could take proper care of Kyle at the present time and recommended the termination of his parental rights.

### 4. CASA

Court Appointed Special Advocate (CASA) K. Jackson testified Kyle's grandparents are providing a loving, happy, and healthy home for Kyle. She described Kyle as "hitting all his milestones" and stated he was happy. She testified Father never contacted her about Kyle.

Jackson further testified she supported termination of Father's parental rights and adoption by his grandparents because it was in Kyle's best interest. She stated Kyle was completely bonded to his grandparents.

### 5. Grandmother

R.T., Kyle's maternal grandmother, testified Kyle's oldest sibling came to live with her and her husband, D.T. (Grandfather), eight years ago, when he was two years of age. Kyle's other sibling came to live with Grandmother and Grandfather when he was eight-weeks old. She stated CPS was involved in the removal of Mother and Father's two older children and neither Mother nor Father completed any services in those CPS cases. She testified Mother and Father had been together for approximately 12 years and domestic violence has been a significant issue throughout the relationship. She also testified Mother has used drugs since she was a teenager. She was not aware that Father used drugs, though she was aware he sold drugs. Grandmother testified Father previously lived with her and Grandfather.

Grandmother testified that it was in Kyle's best interest to have Father's parental rights terminated. She testified Father's violent history was a concern and

8

she believed it better that Father was not part of Kyle's life. However, she testified that if Kyle was interested in having contact with Father, she would help Kyle make contact.

## II.  ANALYSIS

### A.  Standards of review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."). Given the fundamental liberty interests at stake, "termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20.

Due to the severity and permanency of terminating the parental relationship, the law in Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *See J.F.C.*, 96 S.W.3d at 266–67. We review the legal sufficiency of the evidence by considering all evidence in the light most favorable

to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *Id*. at 266. We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence a reasonable factfinder could have disbelieved or found incredible. *Id*. However, this does not compel us to disregard all evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. Because of the heightened standard, we are also mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id*.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## B.    Predicate termination grounds

The trial court made predicate termination findings that Father had committed acts establishing the grounds set out in subsections D, E, and O of section 161.001(b)(1), which provides for termination of parental rights if the factfinder finds by clear-and-convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional

well-being of the child; [or]

. . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Due process requires, however, that when a parent has challenged the sufficiency of the evidence to support endangerment findings under Family Code section 161.001(b)(1)(D) or (E), an appellate court must address those findings to ensure a meaningful appeal due to the collateral consequences of a finding under those subsections. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019); *In re P.W.*, 579 S.W.3d 713, 721 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (even though *N.G.* was decided on constitutional grounds, "consistency with the high court's recent pronouncements demands that, without first determining whether nonconstitutional law requires review of the trial court's (D) and (E) findings, we determine whether the challenge to the sufficiency of the evidence supporting (D) and (E) findings has merit").

### 1. Termination under subsection E

#### a. Legal standard

We begin with the trial court's finding of endangerment under subsection E. To "endanger" means to expose a child to loss or injury or to jeopardize a child's

11

emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). A finding of endangerment under subsection E requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone." *Id.* at 360 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *S.R.*, 452 S.W.3d at 360.

A court may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re V.A.*, 598 S.W.3d 317, 331 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). "Because the inquiry under both subsections D and E includes the conduct of the parent, evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child." *S.R.*, 452 S.W.3d at 360–61. Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. A parent's past endangering conduct may create an inference that the past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See S.R.*, 452 S.W.3d at 367; *In re M.T.R.*, 579 S.W.3d 548, 568 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("Routinely subjecting a child to the probability he will be left alone because his parent is in jail endangers the child's physical and emotional well-being."). "As a general rule,

12

conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

### b. Application of legal standards

Father argues there was no evidence he engaged in any conduct that endangered Kyle. Specifically, Father argues he was not aware Kyle was born, he was not aware Kyle tested positive at birth for Suboxone, and he was not aware Mother refused to pick up Kyle at the hospital because he was incarcerated. Father argues the relevant time frame is immediately prior to removal. Therefore, he argues the only relevant evidence is of Father's actions after Kyle's birth, which reflect no endangering conduct. In response, the Department argues Father's past domestic violence, child neglect, pattern of criminal conduct, and incarcerations supply clear-and-convincing evidence that Father endangered Kyle.

The trial court received clear-and-convincing evidence that Father engaged in a course of conduct that endangered Kyle. Father and Mother had a relationship marked by domestic violence. Grandmother testified domestic violence was an issue for the duration of their twelve-year relationship. Grandmother testified the oldest child of Mother and Father witnessed the violence between the two before the child was removed by the Department. Father acknowledged the pattern of violence in his relationship with Mother, which he testified began in 2010 after the birth of their first child. Nevertheless, he described Mother as the aggressor and stated that he just tried to "keep up with the count."

The Department introduced as evidence Father's three convictions for family violence. The trial court had to consider that Father assaulted Mother at least twice while she was pregnant with Kyle. Mother was approximately eight months pregnant at the time of the two assaults committed by Father in December 2019,

13

and Father acknowledged he was aware of her pregnancy. Kyle's exposure to this violence, in utero, constituted evidence of endangerment. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment."); *In re E.N.C.*, 384 S.W.3d 796, 804–05 (Tex. 2012) ("We agree that an offense occurring before a person's children are born can be a relevant factor in establishing an endangering course of conduct"); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment."); *see also In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied) ("[T]he conduct described does not have to be specifically directed at the child; nor does it have to cause an actual injury to the child or even constitute a concrete threat of injury to the child[.]"). Therefore, this evidence of how Father has treated Mother, as well as how he exposed Kyle to violence before his birth, is relevant to whether a course of conduct under Subsection (E) has been established. *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future. *See id*.

Although Father testified at trial he had worked on controlling his behavior while incarcerated, Father had only recently been released. He testified he completed some classwork in prison that touched on anger management, but he had not sought any individual counseling or classes for anger management. Even though Father's testimony established positive improvements in his conduct since Kyle's birth, this evidence did not negate his previous course of conduct. *J.F.-G.*,

627 S.W.3d at 316 ("We have emphasized, however, that a parent's short-term, positive, post-incarceration behavior does not nullify earlier endangering conduct such that the trier of fact must set the earlier conduct aside."). The trial court could consider Father's 2014 conviction for violence against Mother did not break the pattern of violence between Father and Mother. Father also had several other criminal convictions, as a result of which Father was in and out of prison for much of the time between the birth of his first child in 2010 and the birth of Kyle in 2020.

Father's documented history of violent behavior provides clear-and-convincing evidence from which the trial court could have formed a firm conviction or belief that Father engaged in a course of conduct that endangers Kyle's physical or emotional well-being. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (abusive and violent criminal conduct by parent can produce endangering environment).

We overrule Father's factual-sufficiency challenge to the trial court's finding of endangerment under subsection E.

### 2. Termination under subsection D and O

Because we affirm the order of the trial court on the basis of subsection (E), which subjects Father to the applicability of section 161.001(b)(1)(M) as a potential ground for termination in a future termination proceeding for his other children, we need not address the sufficiency of the evidence supporting the termination of Father's parental rights under subsection (D). Tex. Fam. Code Ann. § 161.001(b)(1)(M) (court may order termination of parent-child relationship if court finds by clear-and-convincing evidence that parent has had parent-child relationship "terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)"); *see N.G.*, 577 S.W.3d

at 237 n.1 ("We recognize that this holding may mean that appellate courts will review findings under section 161.001(b)(1)(D) or (E) without reviewing other grounds. Because those other grounds carry no weight for parental rights to other children . . . due process demands no more.").

As we have determined at least one predicate ground for termination is supported by legally- and factually-sufficient evidence, we proceed to Father's challenge to the trial court's finding that termination of his parental rights was in Kyle's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2).

## C.    Best interest of the child

### 1.    Legal standard

Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of Kyle. *See* Tex. Fam. Code Ann. § 161.001(b)(2). There is a strong presumption that the best interest of a child is served by keeping the child with a natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code Ann. § 153.131(b)). However, prompt and permanent placement of children in a safe environment is also presumed to be in the children's best interest. Tex. Fam. Code Ann. § 263.307(a). The considerations the factfinder may use to determine the best interest of the children, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future physical and emotional danger to the child;

(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the children;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment"). A best-interest finding does not require proof of any unique set of factors or limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

In reviewing the legal and factual sufficiency of the evidence to support the trial court's finding on best interest, we are mindful the focus in a best-interest analysis is not only on the parent's acts or omissions, but also on the nature of the relationship the children have with the parent. *See E.N.C.*, 384 S.W.3d at 808.

### 2. Sufficiency of the evidence

#### a. Desires of the child

Kyle was removed when he was approximately two weeks old and was one year old at the time of trial. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster parents, are well-cared-for by the foster parents, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized as the paramount consideration in a best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.— Dallas 2007, no pet.). Therefore, evidence about the present and future placement is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28.

Here, the evidence reflects Kyle was placed with Grandmother and

17

Grandfather and was doing well, with no special medical needs. The CASA advocate described Kyle as very bonded to his grandparents and his two siblings, who also live with Grandmother and Grandfather. She testified Kyle was a happy child and was "hitting all his milestones." Grandmother testified she and Grandfather intend to adopt Kyle, as well as his two siblings. Father argues on appeal that the CASA advocate and caseworker failed to consider that Father had not had an opportunity to develop a bond with Kyle. However, the evidence introduced in the trial court established that Kyle's older siblings, who have known Father, had no bond with him and only periodically saw Father before his most recent incarceration. Grandmother testified Father's oldest child has chosen not to have contact with Father. This factor weighs in favor of the trial court's finding that termination was in Kyle's best interest.

### b.    Physical and emotional needs of the child

Evidence of a parent's unstable lifestyle can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, 444 S.W.3d 46, 59–60 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (parent's failure to provide stable home and provide for child's needs may contribute to finding that termination of parental rights is in child's best interest).

The record reflects that at the time of trial Father had not secured employment and he did not yet have long-term housing. He admitted he was not in a position to provide for Kyle's needs. Though Father stated he hoped to be able to

18

provide for Kyle, there was no evidence at trial that Father was capable of addressing Kyle's present and future physical and emotional needs. This factor weighs in favor of the trial court's finding that termination was in Kyle's best interest.

### c. Parenting abilities

There is no evidence in the record of Father's parenting abilities. Father's two youngest children, Kyle being one, have lived with their maternal grandparents since they were very young babies. Father's oldest child lived with Father and Mother for his first two years, during which time he was exposed to violence, drug use, and instability. Though Father asked for the opportunity to prove himself as a parent, the factfinder could have determined from Father's pattern of conduct with his older children, that he lacks the parenting abilities to care for Kyle. This factor weighs in favor of the trial court's finding that termination was in Kyle's best interest.

### d. Endangerment

Evidence supporting termination under the grounds listed in section 161.001(b)(1) can be considered in support of a finding that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27. The trial court could properly consider Father's endangerment of Kyle, his criminal history, and his history of domestic violence with Mother as factors in the best-interest analysis.

We have already concluded that Father's pattern of violent conduct established a basis for termination of Father's parental rights. Father argues that because Kyle is presently happy and healthy, this factor does not weigh in favor of termination being in the best interest of Kyle. However, Father's argument is not persuasive. Because he has never met Kyle, we cannot conclude Kyle's health and

happiness at the time of trial is a reflection on Father. This factor weighs in favor of the trial court's finding that termination was in Kyle's best interest.

### e. Father's service plan

Evidence that Father did not comply with the family-evaluation plan for reunification with Kyle also supports the trial court's best-interest determination. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2012). Father had not completed the requirements of his family-evaluation plan. Father was incarcerated during the COVID-19 pandemic and the lack of availability of classes and programs was a factor for the trial court to consider. However, Father did not complete other requirements of the plan that were solely within his control, even while incarcerated during the pandemic, including maintaining monthly contact with the caseworker and the guardian ad litem. Though Father testified he was working towards completing the plan and requested additional time to do so, the factfinder could also consider Father had not completed the services required by the service plans relating to his two older children.

### f. Current placement of the child

The caseworker and CASA advocate both testified Kyle was living with his biological brothers, who were also being raised by his maternal grandparents, and he was very bonded to his brothers and grandparents. The evidence established Kyle's current placement is very stable and loving. Grandmother testified she and Grandfather planned to adopt Kyle. This factor weighs in favor of the trial court's finding that termination was in Kyle's best interest.

### g. Analysis

The evidence at trial supports the trial court's finding that termination of Father's parental rights is in Kyle's best interest, including the evidence of the

stability of Kyle's placement, Kyle's progress in that placement, his grandparents' intention to adopt Kyle, and the comparative dearth of evidence regarding Father's resources and plans for taking care of Kyle. *See In re L.M.*, 572 S.W.3d 823, 838 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("[T]he trial court reasonably could have formed a firm belief or conviction that terminating Father's parental rights was in the child's best interest so that she could promptly achieve permanency through adoption."). Moreover, there was also evidence Father had previously been involved with the Department following the removal of his two older children. Testimony from Grandmother and the caseworker reflected Father never completed any services under the previous family-service plans. His lack of involvement with his two older children before his 2019 incarceration also supports the finding of the trial court.

Our review of the *Holley* factors indicates the trial court's finding by clear-and-convincing evidence that termination of Father's parental rights is in Kyle's best interest is supported by legally- and factually-sufficient evidence, and accordingly we overrule this portion of Father's issue. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Holley*, 544 S.W.2d at 371–72.

We overrule Father's issue one.

## D. Conservatorship

In his issue two, Father challenges the trial court's appointment of the Department as Kyle's permanent managing conservator. We review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). When, as here, a respondent challenges the legal and factual sufficiency of the evidence in a case where the proper standard is abuse of discretion, we engage in a two-pronged analysis:

21

(1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *In re J.J.G.*, 540 S.W.3d 44, 55 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Family Code section 161.207, entitled "Appointment of Managing Conservator on Termination," provides: "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code Ann. § 161.207(a). The trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to Family Code section 161.207." *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Having concluded the evidence is sufficient to support the termination of Father's parental rights, we conclude the trial court had sufficient information on which to exercise its discretion and did not abuse its discretion in appointing the Department as sole managing conservator of Kyle. *See L.G.R.*, 498 S.W.3d at 207 (finding no abuse of discretion in conservatorship finding in which evidence was sufficient to support termination of parental rights). We overrule Father's issue two.

### III. CONCLUSION

We affirm the trial court's final order as challenged on appeal.

/s/ Charles A. Spain
Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

22